**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Respondent/Appellee,

v.

KENNETH EUGENE BARRETT,

      Petitioner/Appellant.

Case No. 12-7086

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO APPELLANT'S MOTION FOR AN EXPANDED CERTIFICATE OF APPEALABILITY**

---

Now comes the United States of America, by and through undersigned counsel, and files this response in opposition to Barrett's Motion for an Expanded Certificate of Appealability (Doc. 01019053403, hereinafter "Mot."), which Petitioner filed after the Court entered a Case Management Order that granted a seven-issue certificate of appealability (Doc 01019047087).

## I. PRELIMINARY STATEMENT

On November 4, 2005, a jury convicted Barrett of three capital-eligible offenses: firearm murder in relation to drug trafficking crimes (18 U.S.C. § 924(c) & (j)); firearm murder in relation to a crime of violence (18 U.S.C. § 924(c) & (j)); and intentionally killing a state law enforcement officer during the commission of a drug trafficking crime

1

21 U.S.C. § 848(e)(1)(B)).  Trl. Doc. 241.[1]  At the conclusion of a penalty phase trial, the jury recommended a death sentence for Count Three (Trl. Doc. 257), which the trial court imposed.  This Court affirmed, *United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007), and the Supreme Court denied certiorari, 552 U.S. 1260 (2008).

On March 16, 2009 (364 days after the Supreme Court's denial of certiorari), Barrett filed a 17-claim motion for relief under 28 U.S.C. § 2255.  § 2255 Doc. 1.  A corrected § 2255 motion, was filed the following day.  § 2255 Doc. 2.  On September 25, 2009, Barrett filed an amended motion for collateral relief, asserting 19 claims.  § 2255 Doc. 70.  The district court ordered Barrett to file a second-amended motion that complied with the Rules Governing § 2255 Proceedings, and permitted him to file a brief in support. Doc. 81.  On December 5, 2009, Barrett filed a second-amended § 2255 motion, asserting 19 claims (§ 2255 Doc. 95), and on March 1, 2010, he filed a supporting brief (§ 2255 Doc. 149).  On May 17, 2010, the government filed an Answer.  § 2255 Doc. 174.  On March 16, 2012, Barrett moved to add five new claims and a restated assertion of cumulative error supplement to his second-amended § 2255 motion.  § 2255 Doc. 201. The district court denied the motion, ruling that the new issues were discoverable at the time of counsel's appointment and, therefore, untimely raised.  § 2255 Doc. 210.  The district court subsequently denied the second-amended § 2255 motion in a pair of orders,

---

[1] Throughout this brief, the government prefaces citations to the documents from the trial docket (E.D. Okla. case no. 04-CR-115-JHP) with "Trl" and citations to the § 2255 Motion docket (E.D. Okla. case no. 09-105-JHP) with "§ 2255."  Citations to documents appearing on the docket in this case have no preface.

one of which was sealed, and declined to issue a certificate of appealability.  § 2255 Docs. 214 & 215.

Barrett filed a notice of appeal (§ 2255 Doc. 222), prompting this Court to calendar a case management conference.  Doc. 01018996720.  Following the conference, the Court issued an order that included a seven-issue certificate of appealability and permitted Barrett to move to expand the certificate.  Doc. 01019047087.  Barrett filed two such motions, one of which is sealed.  This Opposition addresses the unsealed motion to expand the certificate.

## II.  ARGUMENT

Barrett's request to expand the certificate of appealability fails to satisfy the pertinent standard.  Orders denying relief under § 2255 are not appealable absent a certificate of appealability.  28 U.S.C. § 2253(c)(1); *see United States v. Harper*, 545 F.3d 1230, 1233 (10th Cir. 2008).   A court may issue a certificate only upon "a substantial showing of the denial of a constitutional right."  § 2253(c)(2); *United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012).  Such a showing requires "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotations omitted); *see Moya*, 676 F.3d at 1212.  The decision to issue a certificate "must not be pro forma," and a defendant seeking one "must prove something more than the absence of frivolity or the existence of mere good faith on his or her part."  *Miller-El*, 537 U.S. at 337-38.  When

3

a district court denies § 2255 relief on procedural grounds, a certificate may issue only if the defendant demonstrates "'that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *United States v. Springfield*, 337 F.3d 1175, 1177 (10th Cir. 2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The government addresses Barrett's specific requests in turn.

A. <u>Reasonable Jurists Would not Debate the District Court's Rejection of Claims that Trial Counsel Ineffectively Failed to Present Impeachment Evidence</u>

Barrett seeks a certificate of appealability to challenge the district court's rejection of his claims that trial counsel ineffectively failed to present evidence to impeach government witnesses. In particular, he argues that counsel should have obtained transcripts of the law enforcement witnesses' prior inconsistent statements and should have adduced the testimony of Toby Barrett (Barrett's son) and Alvin Hahn (a neighbor) to contradict the testimony of the police. Mot. 3-7. As fully explored by the district court, Barrett's contentions lack a factual basis.

For instance, Barrett contends that his trial attorneys failed to obtain the prior state court testimony of the police witnesses. His assertion is simply incorrect. As the district court specifically found, "counsel had the benefit of having access to the prior state court trial transcripts and, therefore, substantially more information regarding what many of the government's witnesses were going to testify to than is generally available in a criminal

trial." § 2255 Doc. 214 at 139. Moreover, trial counsel effectively utilized cross-examination to emphasize evidence important to the defense in the federal trial without raising the irrelevant discrepancies Barrett raised in his § 2255 motion. *Id*. at 157-62. For instance, counsel did not ask questions of Clint Johnson the district court deemed "counter-productive" in light of the more favorable testimony the witness had already provided. *Id*. at 158-59. So too, the district court noted that counsel did not confront Trooper Poe (*id*. at 159) or Trooper Hamilton (*id*. at 161) with their prior testimony or prior statements that, the court found, were consistent with the witnesses' federal court testimony. Finally, the district court noted, counsel did not attempt to impeach Trooper Greninger with an "insignificant" discrepancy because Greninger conceded on cross-examination that his memory was not clear. *Id*. at 160-61. On this record, no reasonable jurist could debate the district court's rejection of the claim that trial counsel ineffectively cross-examined the police witnesses.

Likewise, Barrett has not shown that reasonable jurists would debate the district court's rejection of his claim that trial counsel should have adduced the testimony of Alvin Hahn and Toby Barrett regarding the circumstances of the shooting. Absent a showing that forgone testimony would have created a reasonable likelihood of acquittal, Barrett cannot establish ineffective assistance. *See Smith v. Workman*, 550 F.3d 1258, 1265 (10th Cir. 2008).

Counsel appropriately decided not to call Toby Barrett as a defense witness. As the district court recognized, Barrett did not want his son to testify (§ 2255 Doc. 214 at 165),

5

and Toby Barrett was obviously susceptible to impeachment for bias (*id*. at 164).  More importantly, Toby Barrett could not contradict the government's evidence that his father was able to observe the approaching police cars and formed the intent to kill people he knew to be police officers.  Toby Barrett has admitted he had limited recall of the entire encounter: "I yelled 'Dad.'  I don't recall how many times I yelled it.  It all happened so fast."  Mot. App. B at 3.  Nor did Toby know when the shooting began: "There may well have been shots before [a police officer tackled me] – again it happened so fast and I was so scared."  *Id*.  But despite his fear and confusion, Toby was able to identify a Crown Victoria on his father's land, a fact that would have permitted the government to argue that Barrett, who was closer to the vehicle, was also able to identify it and perceive the police light attached to it.  § 2255 Doc. 214 at 164.  Reasonable jurists would not debate the district court's ruling that defense counsel appropriately omitted the testimony of a witness susceptible to impeachment for bias, lack of perception and flawed memory, especially given that his testimony might well have assisted the government.

Likewise, counsel's decision not to call neighbor Alvin Hahn did not amount to ineffective assistance.  Hahn was in no position to testify about the circumstances confronting Barrett when Barrett opened fire on the police.  Hahn has declared that he did not look out his window until 15 seconds <u>after</u> he heard the gunfire stop, at which point he saw "at least one vehicle with its police lights on."  § 2255 Doc. 214 at 166-67.  Hahn's declaration provides no indication that he had an unobstructed view of Barrett's land, or that his vantage allowed him to see all possible emergency lights, or that he observed the

approaching officers before the shooting began. *Id*. Hahn's absence from the case did not deprive the defense of a whit of material evidence, much less does it give rise to an appealable issue here.

Finally, no certificate of appealability is warranted with regard to Barrett's claim that his counsel rendered ineffective assistance in failing to call Paul Gordon, an internal affairs investigator with the Oklahoma Highway Patrol, as a fact and expert witness. *See* Mot. at 4 (citing § 2255 Doc. 201-1 at 2-30). As discussed more fully below, the district court found that the new claims constituted a belated amendment of Barrett's long-pending § 2255 motion and properly denied the Gordon-based claims as untimely. *See, infra*, arg. II, D; § 2255 Doc. 210. The court found the claims were discoverable at the time of counsel's appointment but were submitted more than three years after the deadline for seeking § 2255 relief had expired. Reasonable jurists would not debate whether the district court correctly rejected the new claims on procedural grounds, as Barrett has never shown that the new claims fell within any exception to the statutory time bar.

B. <u>Reasonable Jurists Would not Debate the District Court's Procedural Rejection of a Fourth Amendment Claim on Collateral Review</u>

Barrett seeks a certificate of appealability to challenge the district court's rejection, on procedural grounds, of his attempt to show a lack of probable cause supporting the search warrant that led to the recovery of drug evidence underlying federal jurisdiction for this murder. Mot. 7-12. The district court's ruling is not subject to reasonable debate, because Barrett's factual allegations are erroneous, speculative and irrelevant.

Charles Sanders testified at trial that he was the confidential informant whose observations formed the basis of the search warrant served at Barrett's home, but repudiated the substance of the information included in the search warrant affidavit. Trl. Tran. Vol. XI at 2521. Based on that testimony, Barrett's attorneys moved to suppress the drug evidence recovered at the scene, arguing that the warrant affidavit was untruthful. Trl. Doc. 228. Trial counsel argued that Sanders's testimony demonstrated that the warrant was based on false statements that Agent Clint Johnson knowingly or recklessly included in his supporting affidavit. Trl. Tran. Vol. XII at 2677-80; Trl. Doc. 228. The effort was unsuccessful – not because counsel failed to identify any particular inconsistency in Sanders's testimony – but because *Franks* requires an evaluation of the affiant's truthfulness, not the informant's. *Franks* requires a defendant to show that the affiant offered false information intentionally or with a reckless disregard for the truth. *United States v. Tisdale*, 248 F.3d 964, 973 (10th Cir. 2001). Barrett failed to carry that burden.[2] Trl. Doc 253 at 7.

In denying § 2255 relief, the district court found that Barrett had had a full and fair opportunity to litigate his Fourth Amendment claims at trial and on appeal and was therefore barred from raising them on collateral review. § 2255 Doc. 214 at 74 (citing *United States v. Cook*, 997 F.2d 1312, 1317 (10th Cir. 1993)). Barrett counters that he did not have a full and fair opportunity to litigate his claim because his trial attorneys were

---

[2] Barrett's argument that he did not raise a *Franks* claim at trial (Mot. at 7-8 n.8) is belied by the fact that the trial court understood it as such. *See* Trl. Doc. 218.

unaware of information that would have impeached the credibility of Sanders and Johnson. Mot. at 8-11. Once again, information about Sanders's credibility is irrelevant to the *Franks* claim, as the rule in *Franks* is concerned only with the affiant's truthfulness. *See Tisdale*, 248 F.3d at 973. As to the affiant, the district court considered Barrett's allegations about Johnson's credibility and found they were premised on conjecture, speculation, hearsay or information that was incorrect or known to the defendant personally and therefore available to counsel for a *Franks* challenge. § 2255 Doc. 214 at 67-72. Because counsel was not deprived of any material information concerning their prosecution of a *Franks* claim, reasonable jurists would not debate whether the district court correctly rejected Barrett's Fourth Amendment claims on procedural grounds.

C. <u>Reasonable Jurists Would not Debate the District Court's Rejection of Claims that the Prosecution Suppressed Impeach Evidence Regarding its Witnesses or that Trial Counsel Ineffectively Failed to Seek a Continuance to Investigate Those Witnesses</u>

Barrett seeks a certificate of appealability to challenge the district court's rejection of his claims that the government suppressed evidence about the credibility of various civilian witnesses, including Charles Sanders, Travis Crawford and Randy Turman. He also requests a certificate to appeal his related claim that trial counsel ineffectively failed to seek a continuance to investigate these witnesses. Mot. 12-16. The district court's ruling is not subject to reasonable debate, however, as there is no factual basis for the claims Barrett advances.

With regard to Charles Sanders, the trial transcript establishes that the defense counsel knew of the supposedly suppressed state court charges that could be used to

impeach Mr. Sanders at the time of trial. *See* § 2255 Doc. 214 at 41 & n. 106. Sanders, moreover, admitted his extensive history of drug abuse in open court. *Id*. at 41. Assuming Sanders had additional convictions that were unknown to the defense at the time of trial, Barrett has never shown that they were known to the government. *Id*. at 41-42. Indeed, the district court found that Sanders's criminal history was so extensively explored before the jury, that any further evidence on the subject would have been immaterial. *Id*. at 42. Sanders's cooperation agreement with the government was fully explained during his direct examination. *See id.*; Trl. Tran. Vol. XI at 2494-96. As such, Barrett's claims of misconduct are "purely speculative" (*see id*. at 44) and certainly not subject to debate among reasonable jurists. Nor is it reasonably debatable that Barrett was prejudiced by the unavailability of cumulative impeachment information.

Barrett also claims that Travis Crawford (Barrett's cousin) testified falsely as a result of prosecutorial manipulation, but the witness's own declaration indicates otherwise. Crawford, in his declaration, recants a single line of his trial testimony, now claiming he did not hear Barrett say he (Barrett) planned to go "out in a blaze of glory." § 2255 Doc. at 47. Crawford further declared, however, that he first told the prosecutor of this statement in response to an admonition to be truthful and not to fabricate: "Mr. Littlefield asked me if Kenny said he (Kenny) 'was going down in a blaze of glory,' and before I could answer, Mr. Littlefield told me all the bad things that would happen to me if I 'lied.' I was so scared I said, 'yes.'" *Id*. at 45 (quoting Petitioner's Exhibit 45). At trial, Crawford freely testified to Barrett's remark. *Id*. at 47 (citing Trial Tran. Vol. III, at

pp. 465-466).  Crawford's supposed recantation, made more than three years after trial, was elicited in front of the witness's parents, a circumstance seemingly intended to exploit the familial relationship between Crawford and Barrett.  *See id*. at 45.  Indeed, the district court appropriately rejected the parents' hearsay accounts of Crawford's supposed recantation.  *See* § 2255 Doc. 214 at 44 (citing *United States v. Pearson*, 203 F.3d 1243, 1275 (10th Cir. 2000) ("Sworn trial testimony is generally not refuted by unsworn repudiation of that testimony.")).  Comparing the circumstances in which Crawford gave his responses, it was the district court's view that only Barrett's investigators appear to have utilized manipulative techniques: "this court finds it is extremely suspicious in light of Crawford's actual trial testimony; the fact Crawford is Barrett's cousin; and because Crawford was persuaded by a defense investigator to recant in the presence of his mother and father."  § 2255 Doc. 214 at 45.

Furthermore, the allegation that the government suppressed evidence about Crawford's criminal history is baseless.  The government was obligated to disclose only information it possessed, and Barrett has never shown the government knew that Crawford had spent two months in a military brig nearly 20 years before trial or that he had once acted as an informant for local law enforcement.  § 2255 Doc. 214 at 48.  In any event, as the district court observed, Barrett has failed to show that the information he presented to the district court would have affected the outcome of trial, given the quantity of other impeachment evidence:

Crawford testified to his extensive drug use; admitted on cross-examination his arrests for child support violations and hot checks after testifying on direct examination that he had never been arrested; admitted that his drug use affected his memory; and admitted that six years had passed since the events about which he was testifying and that he had never provided a written statement to law enforcement.

*Id.* at 48-49 (footnotes and citations omitted). Viewed against the trial evidence, the allegedly suppressed information was inconsequential. Its absence from trial would not give rise to a debate among reasonable jurists concerning the conduct of prosecutors or defense counsel or the existence of prejudice.

Barrett also claims the government permitted Randy Turman to testify falsely that charges still pending against him were already resolved. But the government did not adduce the testimony, and defense counsel was simply stymied in its ability to elicit the procedural posture of the case from a witness who seemingly did not understand it. During cross-examination, defense counsel raised the issue of Turman's case, and the witness testified it was over. § 2255 Doc. 214 at 60 (citing Trial Tran. Vol. III, at pp. 434-436). The response prompted defense counsel to ask whether Turman wanted to review the records from the matter, which were available, to which the witness answered, "I probably wouldn't understand them." *Id.* Counsel was foreclosed from proving, by extrinsic evidence, what Turman did not believe to be true – the collateral question that his case remained active. *See* Fed. R. Evid. 608(b). Given defense counsel's access to Turman's records, there can exist no reasonable debate that the government had a duty to disclose the records or that defense counsel had failed to investigate the issue.

12

Barrett similarly fails to show that his lawyers misjudged their ability to investigate government witnesses. Barrett has not identified any material impeachment information that the government failed to disclose or that his attorneys failed to identify. Arguing that the government was permitted to suppress certain evidence, Barrett implies that the district court erroneously found that state officials were not part of the U.S. Attorney's investigative team. However, the lower court limited its holdings that the government was not responsible for state-held information, applying that doctrine only in regard to allegations that were unproven (§ 2255 Doc. 214 at 52-53) or of no moment to the verdict (*id*. at 48).[3]

Barrett also argues, without factual basis, that the trial court and prosecution misled his attorneys about the existence of a witness who could contradict Sanders and was supposedly mentioned during an ex parte hearing. The district court, in denying this claim, explored the factual allegation at length. Quoting liberally from the ex parte hearing transcript the court found that "Barrett's claim that the government suppressed the identity of a witness who would have refuted Charles Sanders is a figment of defense counsel's imagination. There is simply no evidence in this record to establish that some

---

[3] Barrett implies the district court ran afoul of this Court's observation that federal agents became involved in the case just after the murder because they searched his home. *See* Mot. at 15 n.13 (citing 476 F.3d at 1090). But the district court noted that fact in rejecting Barrett's argument: "The only involvement by the federal government in this matter was to assist in the execution of the search warrant . . . .The investigative team for purposes of the federal charges was the United States Drug Enforcement Agency (DEA) and this court finds no evidence to suggest that either the DEA or the United States Attorney was aware of Crawford's involvement with local law enforcement." § 2255 Doc. 214 at 48.

undisclosed witness was in a position to contradict Sanders claim that he had been threatened after the murder." *Id*. at 66.

Barrett has failed to show that reasonable jurists could debate any of his claims regarding the suppression of evidence or the failure to investigate the government's civilian witnesses.

D.  Reasonable Jurists Would not Debate the District Court's Rejection of Barrett's Attempt to Introduce Time-Barred Claims Into his § 2255 Motion

Barrett seeks a certificate of appealability to challenge the district court's procedural rejection of his attempt to belatedly amend his § 2255 motion with a series of belated-raised and time-barred claims.  Mot. 16-19.  The ruling is not subject to reasonable debate, because Barrett has never shown that these proffered claims related back to existing arguments and were therefore capable of being adjudicated on the merits.

Belatedly-made arguments that relate back to existing claims satisfy an exception to the one-year time limit on the filing of § 2255 motions.  *See* 28 U.S.C. § 2255(f); *United States v. Espinoza-Saenz*, 235 F.3d 501, 504-05 (10th Cir. 2000).  An untimely amendment that "clarifies or amplifies" an existing claim relates back to the original motion.  *United States v. Weeks*, 653 F.3d 1188, 1206 n.12 (10th Cir. 2011).  However, arguments premised on new facts do not relate back to earlier claims just because they both rely on a common constitutional principle.  *See Espinza-Saenz*, 235 F.3d at 504-05. Thus, a proposed amendment may not introduce a new theory based on facts different from those underlying existing claims.  *See Dean v. United States*, 278 F.3d 1218, 1221

14

(11th Cir. 2002); *see also Mayle v. Felix*, 545 U.S. 644, 655 (2005) ("Amendments . . . relate back . . . if the original and amended pleadings arise out of the same conduct, transaction, or occurrence").

In this case, the district court found Barrett's new claims were discoverable at the time of counsel's appointment but were submitted more than three years after the statutory deadline for seeking § 2255 relief. *Id.* In concluding that the new claims were futile, the court implied that the new arguments did not relate back to existing issues and therefore satisfy an exception to the statutory time bar.

Barrett makes no meaningful attempt to contradict the lower court's ruling, nor could he hope to do so. His amended claims relied almost exclusively on information from Paul Gordon and Judge John Garrett, who went all but unmentioned in prior pleadings. *Compare* § 2255 Doc. 95 & 149 *with* § 2255 Doc. 201. While the new claims generally relied on the same legal principles as the timely-asserted claims, such as the Sixth Amendment right to effective assistance of counsel or the Fifth Amendment right to due process, the new arguments did not relate back to pre-existing claims because they relied on novel factual allegations. For instance, Barrett now states that the amendment related back to ineffective assistance of counsel claims based on the failure to interview Mr. Gordon, a witness who was never previously mentioned in the litigation. Barrett had likewise made a single prior reference to the other mainstay of his amendatory claims, Judge Garrett, who had previously only come up in a passing reference to an unrelated case. *See* § 2255 Doc. 95 at 76.

Given that Barrett presented obviously time-barred claims in his proposed amendment, reasonable jurists would not debate whether the district court correctly rejected the new contentions on procedural grounds.

E.  Reasonable Jurists Would not Debate the District Court's Rejection of Barrett's Claims of Prosecutorial Misconduct in the Penalty Phase Summations

Barrett seeks a certificate of appealability to challenge the district court's rejection of his claim of prosecutorial misconduct during the penalty phase summations In particular, Barrett highlights what he perceives as untoward reliance on first-person pronouns that, in his view, conveyed the impermissible impression that the prosecutors and the jury were part of the same "team."  Mot. 19.  The district court's rejection of this claim is not subject to reasonable debate, as Barrett's claim was procedurally defaulted and his principal authority for it is facially distinguishable, depriving him of any exception to the bar.

Because Barrett's claim of prosecutorial misconduct at trial relied on facts wholly within the ambit of the record, he was required to raise the issue on direct appeal, and his failure to do so resulted in default.  *See United States v. Frady*, 456 U.S. 152, 167-68 (1982).  Had Barrett's misconduct claim possessed merit, he could have shown that his appellate attorneys' failure to raise it constituted an exception to the procedural bar.  *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995).  However, his efforts in that regard foundered on the obvious distinctions between the argument given in his case and the one he attempted to analogize.

16

As this Court has held, prosecutors may not suggest that the jury is part of the law enforcement "team" by arguing as follows:

> [Y]ou the jury, [assistant district attorney] Mrs. Smith and me, and the police, all fulfilled their roles in this case because that's our duty . . . . [T]his defendant ... committed a crime so vile, so vicious, so despicable, so unnecessary that the death penalty is the only answer. Sure your job is hard, but you can do it. Only you can do it. The police department has done all that it can do. When I sit down, Mrs. Smith and I will have done all that we can do. Only the 12 of you can finish the job by going up in that jury room and bringing back a verdict of death. Unless you do that, the efforts of the police department and my office have all been in vain.

*Cargle v. Mullin*, 317 F.3d 1196, 1222-23 (10th Cir. 2003). The prosecutor's summation in this case is not comparable, as he made only a few isolated uses of the first-person pronoun that did not prejudice the defendant or suggest that the jurors would breach their duty to "the team" to return a non-capital verdict. *See United States v. Jones*, 468 F.3d 704, 708 (10th Cir. 2006). For want of any contemporaneous objection to the prosecutor's use of the first-person, a successful appellate challenge to the argument would have required a demonstration of plain error. *United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008). But in the context of the government's lengthy argument, the occasional use of the first person "we" was nothing more than an ill-chosen phraseology that the jury would have understood as such. *See Jones*, 468 F.3d at 708. Indeed, the prosecutor began his argument with a lengthy discussion of the jury's duty to "honestly" and "dispassionately look at this evidence," and concluded it by observing that the jury's task involved a weighing under the law, rather than the performance of the government's wishes: "Under the standards of the law and the instructions by the Court, the Defendant

17

should be as it were, weighed in the balance and found wanting." Trial Tran. Vol. XXVII at pp. 5402-04 & 5426.

While it appears the district court did not specifically address this claim of error, reasonable jurists would not dispute that Barrett failed to show his appellate attorneys were ineffective in failing to raise this issue.

## III.  CONCLUSION

Based on the foregoing reasoning and authority, the government respectfully urges

the Court to deny Barrett's Motion for an Expanded Certificate of Appealability.

Dated: May 23, 2013

Respectfully submitted,

MYTHILI RAMAN
Acting Assistant Attorney General
U.S. Department of Justice

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

/S/ Christopher J. Wilson
CHRISTOPHER J. WILSON, OBA #
13801
Assistant United States Attorney
1200 West Okmulgee
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

/S/ Jeffrey B. Kahan
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; Rm. 345
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

## CERTIFICATE OF DIGITAL SUBMISSION

I certify that all required privacy redactions have been made and, with the exception of those redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the Clerk. I further certify that the ECF submission was scanned for viruses using Trend Micro OfficeScan, updated May 23, 2013, and according to the program is free of viruses.

*/s/Christopher J. Wilson*

## CERTIFICATE OF ECF FILING AND DELIVERY

I, hereby certify that on May 23, 2013, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing. A Notice of Electronic Filing will be sent via the Court's ECF system to the counsel of record for the Petitioner/Appellant:

David Autry - dbautry44@hotmail.com

Joan Fisher – Joan_Fisher@fd.org

Tivon Schardl – Tim_Schardl@fd.org

To the undersigned's knowledge there are no non-ECF registrants who are counsel in this case.

*/s/Christopher J. Wilson*