**IN THE UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,    )
    )
    Respondent/Appellee,    )
    )
v.    )    Case No. 12-7086
    )
KENNETH EUGENE BARRETT,    )
    )
    Petitioner/Appellant.    )

**REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**APPELLANT'S MOTION FOR AN EXPANDED CERTIFICATE OF**
**APPEALABILITY**

Mr. Barrett submits the following as his reply to the Government's response

in opposition to his motion for an expanded certificate of appealability.[1]  The

Government's response was filed May 23, 2013.

**1.  Reasonable jurists could debate the district court's rejection of claims that**
**trial counsel were ineffective for failing to present impeachment evidence.**

The Government argues that trial counsel had access to the transcripts of the

previous state trial testimony of the Highway Patrol witnesses.  (Resp. p. 4-5)  In

fact, the district court repeatedly delayed authorizing payment for the transcripts.

Regardless of the availability of the transcripts, reasonable jurists could disagree

whether counsel effectively impeached these law enforcement witnesses.  In his

---

[1]  No reply is necessary to the COA request made under seal.

amended § 2255 petition, Mr. Barrett outlined in detail significant discrepancies between the testimony the officers had given in the state trials and their testimony at the federal trial. (E.g., Doc. 95, pp. 143-47)

The Government cites the district court's finding that any discrepancies or inconsistencies either did not exist, were "minor," or that there was a sound strategic reason for not pursuing certain lines of inquiry. (Resp. p. 4-5, Doc. 214, pp. 158-61) However, a reading of Petitioner's specific claims with respect to the failure to confront the law enforcement witnesses with their own inconsistent statements and testimony, in which they contradicted themselves and their fellow officers, shows that no reasonable strategy excused these failures and that the inconsistencies, had they been exploited, would have undermined the Government's theory of the case.

More significant still, Trooper Paul Gordon, the Internal Affairs Investigator who arrived at the scene the night of the shooting and interviewed the officers and others involved, was a critical witness who would have completely demolished the Government's theory. Among other things, Trooper Gordon's investigation found that the raid was poorly planned, violated protocol across the board by all but inviting a violent response because police emergency lights *were not engaged*, that the raid should never have been attempted, and that law enforcement may have

fired first. (Doc. 199-1, Exhs. 11:7, 15:8, Docs. 199-12, 199-16, Doc. 199-1:17, ¶¶ 51-55, App. A:10, 12 ¶¶ 23, 25, 26-30, Doc. 201-1:2-30) The Government maintains that any claims respecting testimony that could have been given by Mr. Gordon are procedurally barred because Mr. Barrett attempted supplement his amended petition with "new claims" after the period of limitations expired. (Resp., p. 7)(see also, below) However, Mr. Gordon's declaration and supporting exhibits were filed in support of the amended petition, are part of the record of the amended petition, and the Government never moved to strike them. (E.g., Mtn. to Expand Certificate of Appealability, p. 17)

Reasonable jurists could also disagree whether counsel were ineffective for failing to call Toby Barrett and Mr. Barrett's neighbor, Alvin Hahn. (Resp., p. 5-7) Tracking the district court's findings, the Government argues that Toby Barrett was not called because Appellant did not want him to testify. This is incorrect. Trial counsel's affidavits speak only about Mr. Barrett allegedly not wanting his son to testify in the *penalty phase*. (Doc. 175, Exhs. 11, 12) Toby Barrett's post-conviction declaration states that trial counsel, though promising to do so, never even interviewed him about what he could testify to in the first stage. (Doc. 95, Exh. 96) Toby Barrett could have given testimony like he gave at the state trial: that the police invaded his father's property without warning without emergency

lights being engaged or otherwise identifying themselves as law enforcement. Only after the shooting were emergency lights engaged. Speculation that Toby would have been "subject to impeachment" simply because he is Mr. Barrett's son carries no weight, especially since Toby testified as a prosecution witness at the state trials. Although Alvin Hahn awoke and looked outside immediately after the shooting, his testimony would have complemented Toby Barrett's and would have contradicted law enforcement as to the number of vehicles which had emergency lights engaged at any time.

## 2. Reasonable jurists could debate the district court's rejection of the *Franks* issue as being procedurally barred.

The Government argues that the district court rejected the substantive *Franks* issue because Mr. Barrett had a full and fair opportunity to litigate the issue at trial; that any impeachment information that could have been brought to bear against Charles Sanders was irrelevant because it is the credibility of the affiant which must be evaluated in deciding a *Franks* issue, not the credibility of the informant; and that evidence showing the affiant, Clint Johnson, lacked all credibility and was unreliable was based on innuendo and speculation. (Resp., pp. 7-9) Reasonable jurists could disagree.

The Government and the district court are simply wrong in stating that the credibility of the informant is irrelevant to a *Franks* analysis. *E.g., United States v. Bernal-Obeso,* 989 F.2d 331, 335-36 (9th Cir. 1993). The Government concedes Sanders repudiated in his trial testimony the information he supposedly gave that was the basis for the search warrant. (Resp., p. 8) The Government ignores that in urging the *Franks* motion after Sanders testified, the defense failed to argue this very point, but instead focused on isolated matters. The Government's baseless argument that the credibility of the informant is irrelevant therefore fails to address the wealth of impeachment material regarding Sanders' numerous other prior convictions, deals, dismissed charges, and overall dishonesty which were concealed from the defense. Finally, even a cursory reading of the record shows that reasonable jurists could disagree whether the prosecution suppressed evidence showing that Clint Johnson was unreliable and dishonest. He was investigated for corruption, found to be corrupt, and was fired from the Drug Task Force shortly after Mr. Barrett was sentenced. This is not "innuendo," "speculation," or "slander," but established fact.

**3. Reasonable jurists could disagree with the district court's rejection of claims that the prosecution suppressed impeachment evidence regarding its witnesses and that trial counsel was ineffective for failing to seek a continuance.**

The Government relies heavily on the district court's conclusion that any additional impeachment of the prosecution's informant witnesses would have been superfluous because they were effectively impeached at trial. (Resp., p. 10) This begs the question why the jury then chose to convict Mr. Barrett on count 3, which required specific intent, when the "effectively impeached" prosecution informant witnesses supplied the key evidence of intent.

Mr. Barrett demonstrated in the district court that trial counsel failed to impeach Charles Sanders with numerous other felony convictions he failed to admit, the many deals he had previously received for acting as an informant, his acts of dishonesty, and the fact that people who knew him well, including a family member, regarded him as wholly unworthy of belief. The Government ignores the substance of Mr. Barrett's claims, falling back on the unconvincing argument that the prosecution was not on notice of these facts relating to its *own witness* because his criminal history and the deals he had received were a state matter. This argument holds no water, particularly because Mr. Barrett's case originated in the state court. *E.g., United States v. Antone,* 603 F.2d 566, 570 (9th Cir. 1979).

Reasonable jurists could also disagree with the conclusion that the prosecution failed to disclose the identity of a witness who could impeach Sanders, as revealed by the Government at the improper *ex parte* hearing. The words in the transcript speak for themselves.

Reasonable jurists could disagree with the district court's conclusion that Travis Crawford's post-conviction recantation of his damaging trial testimony (prompted by pressure and threats from AUSA Littlefield) was entitled to no consideration because he was a family member participating in a ruse to get his cousin a new trial. The district court made factual findings and engaged in speculation to reach its conclusions in a vacuum, since it denied an evidentiary hearing. That Mr. Crawford's trial testimony was the product of threats and intimidation from a prosecutor is itself exculpatory evidence, and reasonable jurists could so find.

Reasonable jurists could disagree that no cognizable claim stems from Randy Turman's false testimony that his state case had "been taken care of" when in fact it was still pending and Turman had a clear motive to please the Government with his testimony in the hopes of getting a deal. (The charges against him were eventually dismissed). Although Turman denied he had pending charges on cross-examination, the Government had an independent duty to correct

the false testimony of its own witness. *E.g., Giglio v. United States,* 405 U.S. 150 (1972).

Reasonable jurists could find that trial counsel was ineffective for failing to seek a continuance to prepare for the crucial 11th hour informant witnesses, particularly because trial counsel themselves, in their post-conviction affidavits, state that they were blocked from effectively investigating these witnesses.  (Doc. 175, Exhs. 11, 12)

**4.  Reasonable jurists could disagree with the district court finding that Mr. Barrett's claims relating to Paul Gordon and Judge John Garrett did not "relate back" and are "time barred."**

The bottom line is this: Paul Gordon's proposed testimony, which would have contradicted in full the testimony of the Highway Patrol witnesses and would have squarely supported Mr. Barrett's theory of defense, does not represent a new, time-barred claim, but clearly relates back to specific issues that were already raised.  (Mtn. to Expand Certificate of Appealability, p. 17, n. 14)  The information from Mr. Gordon and Judge Garrett (who spoke to the total lack of credibility of Charles Sanders) simply constitute additional facts supporting claims already made.  New theories or claims were not introduced.

The Government claims Mr. Barrett has made no meaningful attempt to contradict the district court's finding that there is no "relation back," but this is

simply incorrect.  Mr. Barrett has done so repeatedly.  (Doc. 207, Statement of

Issues, pp. 44-48, Mtn. to Expand Certificate of Appealability, pp. 16-18) Because

the evidence from Mr. Gordon and Judge Garrett plainly "relates back" to specific

claims already made, reasonable jurists could disagree these claims are

procedurally barred.  *Mayle v. Felix,* 545 U.S. 644, 664 (2005); *United States v.*

*Espinoza-Saenz,* 235 F.3d 501 (10th Cir. 2000).[2]

**5.  Reasonable jurists could disagree with the district court's finding that the prosecutors did not commit prejudicial misconduct in penalty phase closing arguments.**

Parsing words, the Government argues the prosecution did not, in a manner

condemned by *Cargle v. Mullin,* 317 F.3df 1196 (10th Cir. 2003), attempt to

personally align the jury with the prosecution, but the words spoken by the

prosecutor show that he did exactly that.  ( R 5421-22)  The Government argues

also that any claims regarding misconduct in closing argument are procedurally

barred because they were not raised on direct appeal, but Mr. Barrett has argued

that appellate counsel were ineffective for failing to raise the issue, which would

excuse any procedural bar.

---

[2] The Government attacks the claim that trial counsel were ineffective for failing to interview Paul Gordon because his name had never been mentioned in the litigation, but trial counsel in fact did briefly speak to Mr. Gordon, but failed to conduct anything approaching a competent interview.  (E.g., Doc. 207)

As Mr. Barrett showed in his Statement of Issues, pp. 71-73, this was not the only misconduct engaged in by the prosecutors. They frequently strayed from the record to speculate on Mr. Barrett's alleged "lack of remorse," state of mind, and the "fact" that he would be a "hero" in prison if not given a death sentence; engaged in name-calling; and even stooped to importing the "three hots and a cot" argument made infamous by Oklahoma prosecutor Robert H. Macy.

## Conclusion

The Government's arguments should be rejected and an expanded COA should issue.

Respectfully submitted,

/s/ David B. Autry
David B. Autry, OBA #11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600

/s/ Joan M. Fisher
Joan M. Fisher, ISB No. 2854
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
(916) 498-6666

**Certificate of Electronic and Service**

This is to certify that on this 30th day of May, 2013, I caused the foregoing instrument to be filed with the Clerk of the Court using the ECF System for filing, with service made electronically on the following ECF registrants: Jeffrey B. Kahan, United States Department of Justice, jeffrey.kahan@usdoj.gov, Christopher J. Wilson, AUSA, chris.wilson@usdoj.gov, and Linda Epperly, AUSA, linda.epperly@usdoj.gov.

/s/ *Joan M. Fisher*
Joan M. Fisher