# EXHIBIT B

# DECLARATION OF JOHN GARRETT, DISTRICT JUDGE, RETIRED

John Garrett, a person over the age of eighteen (18) and competent to testify, mindful of the penalties of perjury deposes and says as follows:

1. I told Clint Johnson I did not want to know who the Confidential Informant ["CI"] for the search warrant was.

2. I did, however, have Johnson write the name of the CI on a piece of paper and place it into an envelope and seal it. That envelope was to stay in the court record for appellate purposes and be opened only if/when the four witnesses to its sealing were present.

3. I did not issue any court order, nor was I advised of a court order which permitted opening the envelope without a record of the same, including the presence of all the parties.

4. I have never read or seen the piece of paper upon which Mr. Johnson wrote the name of the person he identified as the CI.

5. I do not know where that piece of paper is, though the original order should have kept it in the court files.

6. I have been advised by Mr. David Autry and his investigator, Leonard Post, that the CI was purportedly an individual known to me as "Monk" Sanders.

7. I was surprised to hear that as I know Mr. Sanders and would not believe anything he told me.

8. His reputation in the community for truth and veracity is well-known and very bad.

9. In my experience as a district court judge in Sequoyah County, I came to believe that Clint Johnson was not a truthful person and not to be trusted.

10. In my experience, Mr. Johnson did a number of questionably ethical things and people were afraid of him because of the information he had and the power he possessed to use that information to the detriment of other people. I was always suspect of him.

11. Despite that, I issued the warrants based on Mr. Johnson's affidavits because the affidavits were valid on their face, and that Mr. Johnson was a member of the law enforcement community.

Garrett - 1

12. As I recall from the state trials, then-sheriff Johnny Philpot had been out to Mr. Barrett's home the week before the September, 1999 raid and talked to Mr. Barrett.

13. The warrant which served as a basis for the nighttime raid was already issued and I have no doubt that had Sheriff Philpot advised Mr. Barrett of the warrant, Mr. Barrett would have voluntarily gone with the sheriff.

14. During the trials, the Oklahoma Highway Patrol ["OHP"] State Troopers were an ominous presence. I wouldn't let them bring their firearms into the courtroom, despite their argument that it offered the court protection. I told them that I had two armed deputies...." They were insistent and I had to firmly reject their request to wear firearms in the courtroom during the trial.

15. OHP officers filled the courtroom and appeared to be trying to intimidate a lot of people. I believed they were trying to intimidate me.

16. I was initially concerned that the the jury "might have been overwhelmed by them," but as the testimony unfolded it became clear that the jury was concerned about the manner in which the troopers executed the raid.

17. Trooper Hamilton stayed by Trooper Eales' widow at all times during the trial. She was transported to court in a single engine plane from McAlister every day.

18. Mr. Barrett was not a danger in the courtroom. We had many hearings during which Mr. Barrett was never anything but a gentleman in all respects. He showed my secretary and me the greatest of respect.

19. Though I also presided over Mr. Barrett's original 1997 delivery charge for the sale of 1/4 gram of meth, I do not know who the CI was in that case or recall the ex parte motion in that case.

I declare under penalty of perjury that, to the best of my recollection, the foregoing is true and correct.

Dated this 21 st day of December 2014 in _____ Adair _____ County, Oklahoma.

_____
John Garrett, District Judge, Retired

Garrett – 2