**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | | |
| Plaintiff - Appellee, | | No. 12-7086 |
| v. | | (D.C. No. 6:04-CR-00115-JHP-1) |
| **KENNETH EUGENE BARRETT,** | | |
| Defendant - Appellant. | | |

On Appeal from the United States District Court for the
Eastern District of Oklahoma

**BRIEF IN OPPOSITION TO MOTION TO REMAND FOR FURTHER
PROCEEDINGS ON NEWLY DISCOVERED EVIDENCE OF
PROSECUTORIAL MISCONDUCT**

**<u>PRELIMINARY STATEMENT</u>**

On September 24, 1999, an Oklahoma Highway Patrol tactical team

attempted to execute state search and arrest warrants on Barrett at his home in

Sequoyah County, Oklahoma. As the team's lead vehicle, a Ford Bronco,

approached his home, Barrett opened fire with an AR-15 rifle. He wounded the

Bronco's driver, Trooper John Hamilton, and killed its passenger, Trooper David

Eales, who was shot after getting out of the vehicle in an attempt to escape the

fusillade. The team ultimately took Barrett into custody. At the time of the arrest,

Barrett was found to be in possession of a baggie of red phosphorous and $2100 in

1

cash.  A subsequent search of his property revealed methamphetamine-manufacturing equipment and chemical precursors of methamphetamine.  *United States v. Barrett*, 496 F.3d 1079, 1082-85 (10th Cir. 2007), *cert. denied*, 552 U.S. 1260 (2008).

On November 4, 2005, a jury convicted Barrett of three capital offenses based on his murder of a police officer in relation to a drug crime.  Trl. Doc. 241.[1] At the conclusion of a penalty-phase trial, the jury recommended a death sentence on one count (Trl. Doc. 257), which the trial court imposed.  This Court affirmed the judgment.  *Barrett*, 496 F.3d 1079.

On March 16, 2009, Barrett filed a motion for relief under 28 U.S.C. § 2255. 2255 Doc. 1.  Barrett subsequently amended his motion to assert 19 claims (2255 Doc. 95).  Several of the claims concerned a government witness and the confidential informant[2] described in the search warrant affidavit, who testified that he had observed the defendant sell methamphetamine from his home.  Tr. 11:2511, 2515, 2520-22; 12: 2631-33.  Declarant A further testified that Barrett knew of the

---

[1] "Trl. Doc." refers to the docket in Eastern District of Oklahoma case no. CR-04-115-P, "Tr." refers to the trial transcript in that case, and "2255 Doc." refers to the docket in Eastern District of Oklahoma case no. CV-09-105-P.
[2] The informant's identity was revealed at trial.  Nonetheless, Barrett has moved to seal the informant's recent declaration (Doc 01019455015), which is Exhibit A to the Motion for Remand.  Because the motion to seal remains pending, the government refers to the informant as "Declarant A."

arrest warrant and had threatened to kill the police if they attempted to serve it. Tr. 11:2511-12, 2515.

The § 2255 claims regarding Declarant A included allegations that the government suppressed evidence of benefits provided to him in exchange for his testimony; that trial counsel ineffectively failed to attack the search warrant in view of Declarant A's trial testimony; that trial counsel ineffectively prepared to cross-examine Declarant A about his criminal record and favorable treatment from law enforcement; and that trial counsel ineffectively failed to call witnesses to impeach Declarant A's credibility. 2255 Doc. 95 at 34-47, 81-108, 264-69, 272-78). The court denied Barrett's second amended § 2255 motion. 2255 Docs. 214 & 215.

Barrett appealed and requested a certificate of appealability ("COA") on 13 issues, including the district court's rejection of his argument that the government had suppressed information about Declarant A's criminal history. Doc. 01019024041. The Court ultimately issued a COA on seven issues that did not include the suppression claim. Doc. 01019047087. The appeal has been fully briefed and argued, and is awaiting decision.

On July 6, 2015, Barrett moved this Court to remand the case to the district court for an evidentiary hearing on newly discovered evidence that allegedly shows that the prosecution intimidated Declarant A and suborned perjury when Declarant

3

A testified that he had seen Barrett in possession of methamphetamine shortly before the ill-fated raid.  Doc. 01019454880 ("Mot. to Remand"); *cf.* Tr. 11:2520-21.  The government opposes Barrett's motion to remand.

## ARGUMENT

### THE PANEL SHOULD DENY BARRETT'S MOTION TO REMAND FOR AN EVIDENTIARY HEARING.

Barrett presents a declaration in which Declarant A claims that he committed perjury at the behest of a trial prosecutor.  Specifically, Declarant A avers that – despite his trial testimony to the contrary – he did not observe Barrett in possession of methamphetamine shortly before the murder.  Barrett now seeks a remand for an evidentiary hearing on alleged perjury and prosecutorial misconduct.  Mot. to Remand 11-17.  Because Barrett cannot demonstrate any prejudice stemming from the alleged perjury and government misdeeds, this Court should reject his request for remand.

Ordinarily, "a request to add new claims after the district court has adjudicated a habeas action" will be treated as a second or successive habeas petition subject to the stringent limitations of 28 U.S.C. § 2255(h), even if the prisoner's "first habeas action has not been finally adjudicated on appeal."  *Ochoa v. Sirmons*, 485 F.3d 538, 540 (10th Cir. 2007) (citing *United States v. Nelson*, 465 F.3d 1145, 1148-49 (10th Cir. 2006)); *cf. United States v. Arrington*, 763 F.3d 17,

4

26 (D.C. Cir. 2014).[3] Further, appellate courts may not consider an issue arising from the denial of a § 2255 motion in the absence of a COA. 28 U.S.C. § 2253; *United States v. Hoon*, 762 F.3d 1172, 1173.

Despite those restrictions, Barrett asks the Court to order remand on a claim he never presented to the district court, upon which he has never received an adverse ruling, about which he has no COA, and which does not involve a new rule of constitutional law or newly discovered evidence of actual innocence (the only grounds on which he might be able to obtain second or successive relief). In support of his request, Barrett relies on *Douglas v. Workman*, 560 F.3d 1156, 1187 (10th Cir. 2009) (*see* Mot. to Remand at 13-14).[4] In that case, the Court held that a new claim raised on appeal that was "closely related" to claims in the defendant's initial habeas petition (which had been denied and was then pending on appeal) should be treated as a "supplement" to the original petition and not a second or successive claim. *See id.* at 1190-95 & n.20. The Court noted that it "would not

---

[3] Under 28 U.S.C. § 2255(h), a prisoner cannot file a second or successive motion for collateral relief unless the court of appeals certifies that it raises "newly discovered evidence" that clearly and convincingly proves that "no reasonable factfinder would have found the movant guilty," or that it is based upon "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

[4] Barrett also relies on a procedurally inapposite case, *Carter v. Bigelow*, ___ F.3d ___, 2015 WL 346075 (10th Cir. 2015). *See* Mot. to Remand at 13. The *Carter* court corrected a district court's refusal to consider a supplemental issue; it did not send to the lower court an issue identified for the first time on appeal.

ordinarily permit a habeas petitioner to supplement his habeas petition in this way," but explained that such a course was warranted based on the "unusual" and "unique circumstances" of the petitioner's case. *Id.* at 1171, 1187-89. These included a number of factors, most notably that the trial prosecutor had willfully and intentionally withheld favorable evidence from the defense, creating a compelling likelihood of prejudice. *Id.* at 1173.

Whatever the merit of *Douglas*'s reasoning on the facts of that case, it is clearly distinguishable from this case. *Douglas* and Barrett's other cited authority, *Carter*, concerned witnesses central to the prosecution's case, leaving little doubt that the misconduct at issue substantially affected the outcome of the trials. *See* 560 F.3d at 1163 (referring to the "linchpin" of the case); *see also Carter*, 2015 WL 3462075 at *4 (referring to "key witnesses"). In this case, however, Declarant A's testimony was at best cumulative and ancillary to other evidence of Barrett's guilt. The government proved that Barrett murdered Trooper Eales by presenting eyewitness testimony and compelling physical evidence, including bullet fragments recovered from the victim's chest that were forensically matched to Barrett's rifle (*see* Tr. 16:3704). Declarant A's testimony served only to corroborate the fact that Barrett was trafficking in methamphetamine, a fact that was established by a mountain of other evidence and which supported federal homicide charges premised on an underlying drug offense. *See* Tr. Doc. 240.

6

At trial, the government presented five alternative drug-trafficking theories: possession with intent to manufacture, distribute, or dispense a controlled substance (Tr. Doc 240. at Inst. 9); possession with intent to manufacture a listed chemical (*id*.at Inst. 10); possession of precursor chemicals with intent to manufacture a controlled substance (*id*. at Inst. 11); attempting to manufacture a controlled substance (*id*. at Inst. 12); and maintaining a place for manufacturing, distributing, or using a controlled substance (*id*. at Inst. 13). To satisfy those five theories, the prosecution presented overwhelming evidence recovered from the crime scene.

Investigators seized glassware, solvents, tubing containing methamphetamine residue, and scales capable of measuring drug quantities for distribution. Tr. 11: 2359; 13:2670, 2956. In a dumpster on Barrett's property, agents found paper towels stained with methamphetamine and an empty iodine crystal bottle. Tr. 11:2376, 2384. In a workshop, they found a used syringe that tested positive for methamphetamine. Tr. 12: 2792-93; 13:3040-45. Inside Barrett's home, agents found a large number of small baggies, 46 clean syringes (secreted in a wall), two bottles of iodine crystals (hidden in a camera), and 1,426 pseudoephedrine tablets (concealed in the ceiling). Tr. 12:2675, 2690-95, 2803-2807, 2817-18; 13:2967-70, 2958-62, 3012-13. The only items lacking for a complete methamphetamine lab were lye and hydrochloric acid, which were

available locally.  Tr. 11:2481; 12:2734-37.  Barrett had enough red phosphorous, iodine, and pseudoephedrine to manufacture about 55 grams of pure methamphetamine.  Tr. 13:3030-34.

Given the strength of the foregoing evidence, Barrett cannot show that Declarant A's recantation – which is subject to a presumption of suspicion – had any likely effect on the verdict.  *See United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir. 1984) (acknowledging the suspect nature of recanted testimony); *United States v. Ahern*, 612 F.2d 507 (10th Cir.1980).  Even if the recantation were not suspect, Barrett can offer nothing more than a preference for Declarant A's current version of events to justify his reliance on the declaration of a witness he concedes was inconsistent at trial (Mot. to Remand at 8) and whom he has previously characterized as "indisputably incredible and untrustworthy" (Doc. 01019024041 at 31).  Suspicious or otherwise, Declarant A's declaration does not exculpate Barrett: it states that he was "into drugs."  Mot. to Remand, Exh. A at ¶ 5.

In fact, Barrett makes no claim that Declarant A's current version of events demonstrates that he did not kill Trooper Eales or traffic in methamphetamine. Instead, he argues that the recantation calls into question the search warrant that led to the ill-fated raid.  Mot. to Remand at 15-16.  The issuance of the warrant constitutes a link in the causal chain that led to the homicide, not an element of any

charge. Assuming, arguendo, that the warrant was illegitimate, it would not assist Barrett in demonstrating that he was not guilty of the charged crimes.

Barrett cannot even show a reasonable likelihood that he would have received a more favorable verdict based on the absence of the search warrant, or some aspect of it. Independent of the search warrant, the state possessed a felony arrest warrant for Barrett (Tr. 2:302-03, 314). The police could have entered the defendant's premises at night under the authority of the arrest warrant without violating state law or the Fourth Amendment. Okla. Stat. Tit.22, § 189; *see O'Rourke v. City of Norman*, 875 F.2d 1465, 1469 (10th Cir. 1989) (noting that felony arrest warrants permit nighttime execution). The search itself was executed the next afternoon (Tr. 11:2346; 12:2776-77), obviating any reliance on the warrant's nighttime service provision. As to the warrant's no-knock requirement, Barrett mooted any need for notice when he fired on the police before they reached his door. Tr. 4:736; 5:989, 1096-97, 1156. Even if Barrett's actions had permitted the police to announce themselves, their failure to do so would not support the suppression of evidence. *See Hudson v. Michigan*, 547 U.S. 586, 593 (2006).

Assuming the search warrant had been invalidated during trial, Barrett could not show prejudice based on the concomitant exclusion of evidence. In a search incident to arrest, officers found Barrett in possession of $2100 and red phosphorous that tested positive for methamphetamine. Tr. 8:1800; 10:2130;

9

16:3620-25, 3627, 3654-58; *see Lavicky v. Burnett*, 758 F.2d 468, 474 (10th Cir. 1985) (setting forth the scope of a search incident to arrest). On the basis of that evidence alone, there exists no reasonable probability that Barrett would have received a more favorable verdict, as it circumstantially demonstrated that he was manufacturing methamphetamine for profit. *Cf. Douglas*, 560 F.3d at 1173.

In addition to the evidence found on the defendant's person, an Oklahoma State Bureau of Investigation agent found coffee filters while processing Barrett's home for homicide evidence under a separate warrant. Tr. 9:2040, 2048-49; *see also* Tr. 16:3617 (explaining the use of coffee filters in methamphetamine manufacture). She also found a bag of syringes and a syringe in a glass-faced box inscribed, "In case of emergency, break glass." Tr. 9:1905, 1987. Beyond the physical evidence, witnesses Randy Turman, Karen Real, and Randall Weaver testified that they received methamphetamine from Barrett at his home. Tr. 2:366; 8:1838; 13:3087-88. Travis and Cindy Crawford testified that they had received drugs there, though they did not identify a source. Tr. 3:458-59; 13:3063-64. Barrett's own witness, Ron Baldwin, testified that he had used methamphetamine at the defendant's home. Tr. 18: 4135-38. In light of evidence presented independent of the drug search warrant, the record contains strong evidence that the defendant engaged in drug manufacturing and distribution. Accordingly, no

reasonable likelihood exists that he would have received a more favorable verdict absent Declarant A's testimony, or the warrant premised on his prior statements.

Because Barrett has not identified any facts that would merit relief, even upon evidentiary development, this Court should deny his request for remand.

**CONCLUSION**

Based on the foregoing reasons and authority, the government respectfully

requests that this Court deny Barrett's motion to remand.

Dated: July 20, 2015:

Respectfully submitted,

MARK F. GREEN
United States Attorney
Eastern District of Oklahoma

/S/ *Christopher J. Wilson*
CHRISTOPHER J. WILSON, OBA # 13801

/S/ *Linda Epperley*
LINDA EPPERLEY
Assistant United States Attorneys
1200 West Okmulgee
Muskogee, OK 74401
Telephone: (918) 684-5100
FAX: (918) 684-5150

/S/ *Jeffrey B. Kahan*
JEFFREY B. KAHAN, PaBN #93199
Trial Attorney, Capital Case Unit
U.S. Dept. of Justice
1331 F Street, NW; 6th Fl.
Washington, DC 20530
Telephone: (202) 305-8910
FAX: (202) 353-9779

**CERTIFICATE OF ECF FILING AND DELIVERY**

I, hereby certify that on July 20, 2015, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Petitioner/Appellant:

Mr. David B. Autry dbautry44@hotmail.com
Ms. Joan M. Fisher Joan_Fisher@fd.org
Mr. Tivon Schardl Tim_Schardl@fd.org

I hereby certify that I caused a true and correct copy of the foregoing document to be mailed via the United States Postal Service on July 20, 2015, to the following:

Not Applicable as Defendant Has Counsel

/s/ *Jeffrey B. Kahan*

**ADDITIONAL CERTIFICATIONS**

I hereby certify as follows:

1.      All required privacy redactions have been made pursuant to Fed. R. App. P. 25(a)(5),  Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1; Fed. R. Bankr. P. 9037;

2.      No hard copies of this pleading are required to be submitted to the clerk's office;

3.      This ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program, McAfee Virus Scan, updated July 20, 2015, and, according to the program, is free of viruses.

Dated: this 20th day of July, 2015, /s/*Jeffrey B. Kahan*