**DAVID B. AUTRY**, OBA No.11600
Attorney at Law
1021 N.W. 16th Street
Oklahoma City, Oklahoma 73106-6405
Telephone: (405) 521-9600

**HEATHER E. WILLIAMS**, CA Bar No. 122664
Federal Defender
**JOAN M. FISHER**, Idaho Bar No. 2854
Assistant Federal Defender
**TIVON SCHARDL**, Fla. Bar No. 73016
Assistant Federal Defender
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700
Joan_Fisher@fd.org
Tim_Schardl@fd.org
Attorneys for Petitioner,
KENNETH EUGENE BARRETT

## IN THE UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **CAPITAL CASE** |
| | ) | |
| Respondent/Appellee, | ) | |
| | ) | |
| v. | ) | Case No. 12-7086 |
| | ) | (E.D. Okl. Nos. 6:04-cr-00115-JHP, |
| KENNETH EUGENE BARRETT, | ) | 6:09-cv-00105-JHP) |
| | ) | (lower docket) |
| Petitioner/Appellant. | ) | |

_____

## PETITIONER'S BRIEF IN REPLY TO GOVERNMENT'S BRIEF IN
## OPPOSITION TO MOTION TO REMAND
_____

Mr. Barrett, through counsel and pursuant to Fed. R. App. P. Rule 27 and 27(a) (4), (d), files this reply to the government's Brief in Opposition, Doc# 01019462256 ["BIO"] to his Motion to Remand For Further Proceedings on Newly Discovered Evidence of Prosecutorial Misconduct, Doc#01019454880 ["MTR"].

## ARGUMENT

The government's Brief in Opposition to Mr. Barrett's Motion to Remand is wrong at every level. The government does not deny or even address the criminal and unconstitutional acts of perjury and intimidation of witnesses raised in the motion. The Opposition ignores the government's obligation to seek justice and the outrageous acts committed by the prosecutor at trial. Instead, it holds fast to a version of facts the record shows to be seriously flawed. The government seeks to salvage an invalid judgment in a capital case by unsupported arguments regarding sufficiency of the evidence, a standard not at issue.

### 1. The Government Misstates the Standard of Prejudice.

The government articulates a non-existent requirement of "a compelling likelihood of prejudice." BIO, p. 6 From this, the government argues the misconduct at issue must "substantially affect[] the outcome of trial." The government suggests Mr. Barrett must show that "Declarant A's current version of events demonstrates that he did not kill Trooper Eales or traffic in

1

methamphetamine." BIO at 8. Mr. Barrett bears no such burden.

Based on the nature of the prosecutor's misconduct, the prejudice requirement is easily satisfied. Because the presentation of perjured testimony is "a corruption of the truth-seeking function of the trial process," where, as here, the prosecutor knowingly presents perjured testimony, the conviction must be set aside if there is any *reasonable likelihood* the false testimony could have affected the jury's judgment. *United States v. Agurs*, 427 U.S.97, 103-104 (1976). The government's insistence that Mr. Barrett effectively prove actual innocence to prevail on the motion to remand would excuse the most egregious prosecutorial misconduct. That is not the law.

**2. Mr. Barrett was Prejudiced by the Government Misconduct.**

The government's approach is too constricted. It confines the perjury to Declarant's A's testimony at trial on the issue of drug activity. Declarant A's declaration not only sets out his own perjury, it also shows perjury by Drug Task Force Officer ["TFO"] Clint Johnson in his search warrant affidavit and his trial testimony. On Declarant A's testimony alone, the perjury affects not only the question of recent drug activity, but undermines his overall credibility. Declarant A testified about critical issues, including whether Mr. Barrett had notice of law enforcement's presence and whether he harbored the specific intent to kill a peace

officer. (Tr 11: 2514-2515.) In the penalty phase, the government called Declarant A to testify to Mr. Barrett's future dangerousness. (Tr 22: 4586-4588.)

If the jury was aware of the government's reliance on false testimony, and that the prosecutor compelled the false testimony using threats and promises of the nature described by Declarant A, there is little doubt it would have viewed Declarant A's testimony – and the government's case – far more skeptically. Had the jury known the prosecutor was inclined to intimidate and bully witnesses into testifying in the manner he desired, this would have affected the jury's judgment not only as to the credibility of Declarant A and Clint Johnson, but the government's case as a whole.

### 3. The Evidence is not Overwhelming.

The government's claim that the evidence offered in support of the Motion fails to show Mr. Barrett was prejudiced is without merit. The case rests primarily on the government's assertion that the shooting was related to a drug-trafficking crime, and that Mr. Barrett knew the invading vehicles were law enforcement and that he intended to kill an officer. Every material fact, other than that there was a shootout in the middle of the night that ended in the tragic death of Trooper Eales, is contested.

Declarant A's testimony was neither ancillary nor cumulative. See BIO at 6. The prosecution falsely claimed, and Declarant A falsely testified, that he provided

3

probable cause for the search warrant, without which law enforcement had no right to trespass onto Mr. Barrett's property in the middle of the night. Declarant A testified to "drug activity" he now admits did not occur. Without the drug-related offenses there would have been no federal prosecution. See CrDoc. 52.[1]

The fact Declarant A was pressured into testifying corroborates allegations by other late-disclosed drug informant witnesses of intimidation by the prosecutor, pressure to lie about Mr. Barrett's drug activity, his knowledge of the outstanding warrant, and purported statements of his intent to kill law enforcement. *See e.g.,* MTR, p. 15 n. 5. *See also,* Doc. 199-1at 26 ¶84. Declarant A was a linchpin to the government's case.

The government asserts it "proved that Barrett murdered Trooper Eales by presenting eyewitness testimony and compelling physical evidence." BIO at 6. Even taken at face value, the eyewitness testimony and forensic evidence did not prove murder. If believed and not seriously compromised by many inconsistencies and Mr. Barrett's lack of expert assistance,[2] the evidence may show that Mr. Barrett killed Trooper Eales. It does not, and cannot, prove he specifically intended to kill a person known by him to be an officer in the course of a drug trafficking offense.

---

[1] While it is true other late-disclosed witnesses testified to drug activity, none of them put the drug activity at or near the time of the raid. See MTR, p. 9.
[2] See generally, Doc 95 (Amended Section 2255 Motion to Vacate).

The government asserts "the fact that Barrett was trafficking in methamphetamine was established by a mountain of other evidence[.]" BIO at 6. But this argument relies on evidence seized illegally as the result of a perjured search warrant affidavit. *See Weeks v. United States*, 232 S.Ct. 383, 398 (1914). Moreover, there is nothing to support a finding that *at the time of the raid*, Mr. Barrett was engaged or intended to engage in drug trafficking. There was no methamphetamine lab (Tr 11:2440) or even a suspicion that there was a lab on the premises. Otherwise, law enforcement's approach to the residence would have been far different. *See* DC Doc 199-1 EXH.3 (The Meth Lab), 4 (Kitchens of Death). The government's argument that Mr. Barrett had "enough red phosphorous, iodine, and pseudoephedrine to manufacture about 55 grams of pure methamphetamine" is speculative at best. The pseudoephedrine had not been processed, so whether or not Mr. Barrett had a sufficient amount to manufacture methamphetamine in any specific quantity amounts to conjecture.[3] (Tr 13:3030-34.)

Other than the red phosphorous, the items seized were legal and useful for ordinary household purposes.[4] (Tr 11:2437-39.) By the government's own

---

[3] Mr. Barrett was not charged with drug offenses in state court. His guns were legal. And the evidence of the substance consistent with red phosphorous was not admitted due to inexplicable breaks in the chain of custody.

[4] The "scales" the government mentions were not of the type used by drug dealers. No drug residue was present on them. (Tr 11:2421-23.)

admission, Mr. Barrett did not have lye and hydrochloric acid, ingredients necessary to manufacture meth. BIO, p. 7-8. The suggestion that because the items were available locally, Mr. Barrett was therefore "manufacturing" defies logic. *Id.,* at 8. Everything offered by the government to "prove" manufacturing, other than the suspect precursor, was available locally.

The residue supposedly found in a syringe, as well as the presence of other syringes, suggest methamphetamine *use*, not the manufacturing or attempted manufacturing alleged in the indictment. Only Declarant A's testimony purports to show the type of drug activity alleged in the indictment at or near the time the search warrant was issued.[5]

### 4. The Arrest Warrant does not Eliminate Prejudice.

Finally, the government seeks to take refuge in the irregularly issued arrest warrant. It asserts that even if the search warrant was illegal, the officers could have arrested Mr. Barrett, would have found $2100 in his pocket with red phosphorous, and this alone would have supported the federal convictions. BIO at 9. The arrest warrant was issued in January 1999, six months before the raid. It was never served despite ample opportunity to do so. *See e.g.,* MTR, Exhibit B; MTR, Appendix 5.

---

[5] The government relies heavily on Mr. Barrett's supposed possession of red phosphorous in his pants pocket. The circumstances surrounding the "discovery" of the pill bottle containing red phosphorous are so suspect that any juror who knew of the misconduct alleged here would undoubtedly have believed it was planted. *See generally,* POB. P. 7 n.6; RB, pp. 2-3; DCDoc 199-1, p. 16 ¶¶45-47

Although Okla. Stat. tit. 22 § 189 permits service of a felony arrest warrant at night under limited and specific circumstances, BIO at 9, executing the warrant in a military-style raid for practice[6] would have been illegal. Moreover, the offense did not occur pursuant to service of an arrest warrant. Prejudice is determined by the likely affect of the perjured testimony on the jury's judgment, not hypothetical scenarios that may have had a different affect. The illegal search warrant the night before does not turn an illegal search into a legal one. Cf. BIO at 9. The government's assertion that it could have done a myriad of other things does not and cannot excuse what it did , *i.e.*, convict Mr. Barrett by relying on coerced perjured testimony.

### 5. The Motion to Remand Does Not Raise a New Claim.

The government argues also that Mr. Barrett seeks a remand "on a claim he never presented to the district court, upon which he has never received an adverse ruling, about which he has no COA, and which does not involve a new rule of constitutional law or newly discovery evidence of actual innocence[.]" BIO at 5. Mr. Barrett seeks a remand to give the district court the opportunity to consider the claims of prosecutorial misconduct raised previously.

At the time the district court considered and ruled upon Mr. Barrett's § 2255 motion and his motions for discovery and an evidentiary hearing, it did not have

---

[6] See MTR, Appendix 3.

before it the evidence of the government's misconduct as described by Declarant A. This evidence would have affected the court's consideration of a number of claims raised by Mr. Barrett. *See e.g.,* pp. 264 - 268 (Ground 4: constitutionally invalid search warrant under *Franks v. Delaware*, 438 U.S. 154 (1978)); pp. 270-96 (failure to disclose impeachment evidence concerning drug informant witnesses); 297-303 (misconduct by TFO Johnson and prosecutor Littlefield). Mr. Barrett also raised related ineffective assistance of counsel claims that may have been impacted by this evidence. *See e.g,,* DC Doc 95, pp. 34 - 47 (Ground II.A.2: IAC for failure to re-raise *Franks* issue); pp. 100 – 108 (Ground II.A.5(c)(2) (IAC for failure to adequately cross-examine informant); pp. 178 – 182 (II.A.14 IAC for failure to preserve record). The claims are not new.

Even if the evidence expands existing claims or raises a new claim, it is as close or more closely related to claims already raised than those on which this Court ordered remand in *Douglas v. Workman*, 560 F. 3d 1156, 1187 (10th Cir. 2009). The intimidation of witnesses and subornation of perjury in a capital trial is, or certainly should be, sufficiently unusual or unique to merit further consideration by the district court.

### 6. Mr. Barrett is Entitled To a Remand and a Hearing.

Much of the evidence at trial was inconsistent, conflicting, fabricated and false. The rampant misconduct of the government, including that now proffered,

leaves little doubt the judgment in this case was seriously tainted.  At the very least,

Mr. Barrett is entitled to full evidentiary development and a hearing on the

prosecutorial misconduct left unanswered and nowhere denied by the government.

*See Bracy v. Gramley,* 520 U.S. 899, 908-09 (1997); *Pyle v. Kansas*, 317 U.S. 213,

216 (1942).

Mr. Barrett's Motion to Remand should be granted.

DATED this 27th day of July, 2015

Respectfully submitted,

/s/ *David B. Autry*

DAVID B. AUTRY, OBA# 11600
Attorney at law

HEATHER E. WILLIAMS, CSB#122664
Federal Defender

/s/ *Joan M. Fisher*
JOAN M. FISHER,
ISB#2854

Assistant Federal Defender

Attorneys for KENNETH EUGENE BARRETT

**CERTIFICATE OF DIGITAL SUBMISSION**

I certify that all required privacy redactions have been made and, with the exception of those redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the Clerk. I further certify that the ECF submission was scanned for viruses using Systematic Endpoint Protection, updated, July 27, 2015, and according to the program is free of viruses.

 /s/ *Joan M. Fisher*

# <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

This is to certify that on this 27th day of July, 2015, I caused the foregoing

Motion to Remand to be filed with the Clerk of the Court of Appeals using the

ECF System for filing and with service to be made electronically on the following

ECF registrants:

        Jeffrey B. Kahan,
        United States Department of Justice,
        jeffrey.kahan@usdoj.gov,

        Christopher J. Wilson,
        Assistant United States Attorney,
        chris.wilson@usdoj.gov

        Linda Epperley
        Assistant United States Attorney
        linda.epperley@usdoj.gov
        United States Department of Justice,
        Eastern District of Oklahoma,

        To the undersigned's knowledge, there are no non-ECF registrants who are counsel in this case.

Dated:   <u>July 27,  2015</u>

                    /s/ <u>*Joan M. Fisher*</u>
                    Joan M. Fisher, ISB No. 2854
                    Assistant Federal Defender
                    Office of the Federal Defender
                    801 I Street, Third Floor
                    Sacramento, CA 95814