**IN THE UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **CAPITAL CASE** |
| | ) | |
| Respondent/Appellee, | ) | **PETITION FOR REHEARING AND** |
| | ) | **REHEARING EN BANC** |
| | **)** | |
| v. | ) | Case No. 12-7086 |
| | ) | |
| | ) | (E.D. Okl. Nos. 6:04-cr-00115-JHP, |
| KENNETH EUGENE BARRETT, | ) | 6:09-cv-00105-JHP) |
| | ) | (lower docket) |
| Petitioner/Appellant. | ) | |

_____

Petitioner Kenneth Barrett, pursuant to FRAP Rules 40 and 35, moves this for a

rehearing and rehearing en banc of the Panel Opinion.  Attachment A, Opinion at 2 .[1]

Petitioner requests rehearing, and suggests a rehearing en banc, of the panel's decision

affirming the district court's denial of Barrett's claims of ineffective assistance of counsel

[IAC] at the guilt/innocence stage.

STATEMENT REQUIRED BY RULE 35(b)

Under FRAP 35(b) and 40, rehearing en banc is necessary because:  the panel

decision conflicts with the United States Supreme Court Opinion in *Strickland v.*

*Washington,*  466 U.S. 688, 688 (1984) and *Hinton v. Alabama,* - U.S. -, 134 S. Ct. 1081

(2014) and the proceeding involves question of exceptional importance.

_____

[1] The Opinion granted partial relief, vacating the judgment and remanding the case for an
evidentiary hearing on Barrett's claim of penalty phase IAC claims. Opinion at 47.

*Strickland v. Washington, supra,* emphasizes that judicial evaluation of attorney performance in an ineffectiveness claim "must be whether counsel's assistance was reasonable under all the circumstances." *Id.* The panel disregards that edict in favor of applying an abortive analysis resting on a single factor: the "favorable" results in a similar prior case with the same defendant. Opinion at 13. While not irrelevant, the "winning strategy" approach does not relieve the Court of its obligation to consider all of the circumstances. The panel opinion violates *Strickland* by imposing a simplistic solution to a factually and legally dense set of circumstances.

The Opinion also conflicts with *Hinton v. Alabama, supra* and fails to consider the budgetary pressures put on counsel, that were reasonably likely to compel them to make strategic decisions "without thorough investigation of [the] law and facts." *Hinton*, 134 S. Ct. at 1089. The excessive weight given by the panel to its understanding of the prior state prosecution and strategy of different trial counsel, skewed the Court's analysis and distorted the well-established principles of *Strickland.*

This is a death penalty case. "[T]he representation of a person charged with a capital offense imposes the heaviest professional responsibility known to the practice of law." *Johnson v. Cabana*, 818 F.2d 333, 340 (5th Cir.1987). In this case, because of the importance and effect of expert testimony on jury deliberations, trial counsel's failure to conduct a reasonable investigation and consult with independent qualified experts created an unreasonable risk of the execution of an innocent man.

Contrary to the panel's understanding, this is not a complaint of the choice of expert but of counsel's unreasonable investigation before making a choice, leading to an

2

uninformed choice that in effect deprived Mr. Barrett of any defense experts, leaving him defenseless. In conflict with *Strickland* and this Court's jurisprudence, the panel did not consider the actions of counsel in the aggregate and disregarded a substantial factual showing that, at the very least entitled Mr. Barrett to an evidentiary hearing. *Strickland,* 466 U.S. at 694-96; *Cargle v. Mullin,* 317 F.3d 1196, 1212 (10th Cir.2003).

### RELEVANT FACTS AND COURSE OF PROCEEDINGS[2]

Mr. Barrett was charged in state court for the capital murder of Trooper Eales. He was tried twice: the first trial ended in a mistrial; in the second, the jury found him guilty of voluntary manslaughter and sentenced him to thirty years. Mr. Barrett was represented in the state cases by John Echols. Despite the government's policy against such prosecutions, Kenneth Barrett was charged in federal court and convicted by jury of three counts of capital murder, including two counts for felony murder and one count of intentional murder and sentenced to two fixed life sentences and death. [3] Opinion at 2.

In the early morning hours of September 24, 1999, Mr. Barrett's property and home were invaded by three vehicles in the middle of the night, provoking a major firefight and ending in the tragic death of Oklahoma Highway Patrol Trooper David Rocky" Eales. Most of the details of what followed the initial trespass and collision into Barrett's house is and remains controversial.

---

[2] Many of the facts in the panel opinion are credibly controverted by the record or by evidence offered in support of the Section 2255 Motion [Doc. 95]. The absence of denial of any fact asserted in the Opinion is a not an admission thereto.
[3] Echols also initially represented Barrett in federal court with appointed co-counsel, Roger Hilfiger but later withdrew. CrDoc 130.

Mr. Barrett's defense was uncomplicated. His property was assaulted in the middle of the night by an unmarked vehicle that first accelerated toward Mr. Barrett's 16-year old son walking to his grandmother's house next door. Just as suddenly, the vehicle turned its blinding headlights toward Barrett's house and accelerated. Barrett fired his legally-owned gun from inside his house directly at the vehicle. Barrett had no idea that the person or persons inside the Bronco that rammed into his porch were law officials.

Under the government's theory, Barrett was a methamphetamine manufacturer with a vendetta against law enforcement who knew that the oncoming vehicle was law enforcement and seized the opportunity to kill a law enforcement officer. Numerous inconsistent, sometimes perjurious, descriptions of the event, and an ill-qualified crime scene expert using junk science testified to two critical disputed facts: the lead Bronco took fire while approaching from the east, placing Barrett where he would have seen the third vehicle's emergency lights; and, Barrett shot from his porch directly at Trooper Eales, intending to kill him. The government argued, and this Court accepted, that despite no police markings or emergency lights on the first two vehicles (Broncos), the third vehicle trailing well behind activated its lights. Thus, Barrett knew police were on his property and intended to kill a law enforcement officer.

This Court affirmed the convictions and sentences on appeal. *United States v. Barrett,* 496 F.3d 1079 (2007).

Barrett filed a 28 U.S.C. § 2255 Motion raising numerous claims, including judicial interference with the defense, ineffective assistance of counsel [IAC] and

prosecutorial misconduct.  *See* Doc. 95. [4] Barrett presented credible evidence showing:

- That the raid was contrary to the standards and practices of law enforcement agencies; it increased the chance that Mr. Barrett would be unable to tell whether those attacking him and his teenage son were law enforcement officers; the raid would play into any paranoid fears or legitimate fears of being attacked by drug dealers or other criminals; and, that the lead Bronco advanced onto the property from a tactically disadvantageous position that drew fire towards Trooper Eales.

Doc 71, Exh 44 .  (Dr. George Kirkham, nationally recognized police tactics expert.)

- That the government crime scene reconstruction expert lacked sufficient knowledge of ballistics, vehicle construction, and the necessity of using consistent, accurate terms of reference when reconstructing a scene to render reliable, credible opinions about a shooting scene involving a vehicle and "did not follow widely accepted protocol used in shooting incident reconstruction. ... Consequently, her findings cannot be regarded as being generally reliable for purposes of reconstructing the events associated with the shooting under investigation."

Doc 72, Exh 109 at 3, 6 (Edward Hueske, Exh 110).

- Mr. Barrett had a well-documented history of mental impairments that were highly relevant to why he stayed close to his property, what he would have perceived at the time of the raid, and on his intent at the time of the shooting.

Doc 72, Exhibits 89, 117 and 55. (Myla Young, George Woods, and Bill Sharp.)

Mr. Barrett's § 2255 Motion was summarily denied without discovery or evidentiary hearing.  Docs 214, 216 [Under Seal].

---

[4]   References to pleadings in Mr. Barrett's 2255 Motion, E.D. OK. No. 2009-Cv-0105, will be denoted as "Doc."  References to the underlying criminal case, E.D. OK. No. 2009- Cr-0115 will be denoted by "CrDoc."  References to the trial transcripts will be by CrDoc [No], followed by "Tr Vol, p."

## REASONS FOR GRANTING THE REHEARING

**A.     *STRICKLAND V. WASHINGTON* AND ITS PROGENY.**

Trial counsels' undisputed failure to investigate and present independent expert witnesses in areas critical to establishing the defense "had a pervasive effect on the inferences to be drawn from the evidence" altering the entire evidentiary picture. *Strickland, supra,* at 699.  As a result, Barrett was denied a fundamentally fair trial. Without the experts, his claims of lack of intent and self-defense were only marginally supported by the evidence.[5]

Absent any investigation other than review of partial state trial transcripts, trial counsel called a hostile government police tactics witness (Chuck Choney), relied on a weak and undeveloped strategy of cross-examination of the government's crime scene "expert" (Iris Dalley) and called no mental health experts.  The result was biased witnesses one of whom was flat out peddling junk science. While much of the testimony was favorable to the state, little of it was favorable to the defense. In contrast, the readily available defense experts would have given the jury credible evidence of lack of knowledge, self-defense and the inability to form the specific intent.  The result was an unfair trial with unreliable verdicts.

The overarching test for effective assistance of counsel is whether the defendant's attorney subjected the prosecution's case to meaningful adversarial testing. *Strickland v.*

---

[5] . *See e.g.,* Opinion, p.18 (finding no IAC for failure to request a self-defense instruction because it was "exceedingly unlikely that the jury, on the evidence before it, could have had a reasonable doubt that Defendant believed that he needed to use deadly force to defend himself (or anyone else)").

*Washington,* 466 U.S. 668, 686 (1984) ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.,* at 690-91. It is against this standard that trial counsel's decisions must be measured.

"Invalid forensic testimony has been found to contribute to the wrongful convictions of innocent persons[.]" *Hinton v. Alabama*, - U.S.-, 134 S. Ct. 1081, 1088 (2014) (citations omitted). Mr. Barrett has consistently claimed to be innocent – and with competent trial counsel and qualified experts may well have convinced a jury of that fact. In *Hinton,* the Supreme Court recognized the importance of expert testimony in criminal trials. *Id.* [T]he "threat to fair criminal trials posed by the potential for incompetent or fraudulent prosecution of forensics experts" "is minimized when the defense retains a competent expert to counter the testimony of the prosecution's expert witnesses, it is maximized when the defense instead fails to understand the resources available to it by law."[6] *Id*. *Strickland* and *Hinton* make clear that decisions relating to the selection and

---

[6] The ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases make clear "counsel must be experienced in the utilization of expert witnesses and evidence, such as psychiatric and forensic evidence, and must be able to challenge zealously the prosecution's evidence and experts through effective cross-

presentation of an expert made on insufficient research and investigation or a

misunderstanding of the right to the same are constitutionally deficient. *Id.*

The panel decision finding otherwise conflicts with these principles. Rehearing

must be granted.

**B. COUNSELS' RELIANCE ON ONLY GOVERNMENT EXPERTS WAS BASED ON INSUFFICIENT INVESTIGATION AND UNREASONABLE.**

Appointed counsel Roger Hilfiger ["Hilfiger"] did not consult with any experts in

preparation for Barrett's case. He did little or no investigation other than review the

partial state trial transcripts. The only "expert" called to show the dangerous and

inappropriate situation the OHP created by its unprofessional execution of the defective

warrants[7] was a former FBI Swat Team expert who testified for the government in the

state trials. In a government declaration, Hilfiger gives an extremely weak explanation of

why he relied only on cross-examination of the crime scene witness, Dalley and no

explanation for calling Choney, the hostile government police tactics expert. *See id.*

The Panel Opinion does not address the evidence in the record showing why

counsel likely called Choney and relied on cross for Dalley rather than calling

independent defense experts other than a prior "winning strategy."[8] *E.g.,* The trial judge

---

examination." *Id.,* 31 Hofstra L. Rev. 913, 924 (2003); See Guideline 5.1 (B)(2)(e) (Rev. Ed. 2003).

[7] See Doc No. 01019455016, Exhibit A, Declaration of CI Charles "Monk" Sanders.
[8] While the Panel extols the winning nature of the state trial strategy, Barrett did not win. He claimed innocence throughout; a conviction of manslaughter with a thirty year sentence when no crime has been committed, though better than a conviction for murder, is not a win.

voiced repeated concern over finances including defense experts, and coerced counsel to rely heavily on the work done in the state trials. *See* Doc 95, Exh 64, 65. The court pushed the case go to trial rapidly. Doc 95, Exh 34. See also Doc 51. The court refused to permit trial counsel to expend funds in investigation based on their independent professional judgment, but required them to file "detailed statements regarding the exact factual issues investigated and the significance of those facts to the evidence which counsel anticipates will be admitted at trial." CrDoc 97, Order filed 3/18/05 at 2 n.2. Defense requests for expert assistance, made while Echols was lead counsel, were either denied in full or in substantial part. *Id.*, at 2.

Hilfiger's lack of work on the case is also evident. *See e.g.,* CrDoc 113. The relationship between the trial judge and defense counsel may also have impacted Hilfiger's decision-making. See Doc 72, Exhibits 54, 67; see also CrDoc 97 at 3.

It is against this background that counsels' failure to secure a single favorable independent defense expert must be measured. Contrary to the Opinion, counsels' decisions fell far below professional standards.

> ### 1. *Counsels' Decision to Call a Hostile Government Swat Team Expert.*

In the state trials, the prosecution called former FBI SWAT Team expert Chuck Choney. On cross-examination by Echols, Choney reluctantly gave helpful responses regarding the OHP's irresponsible actions. CrDoc 310, Tr Budget Hearing, p. 16. Trial counsel and the court were specifically advised by Echols of Choney's total commitment *not* to be called as a defense witness, telling Echols: "*I would rather be drawn and*

9

*quartered than appear in court as a defense witness in Mr. Barrett's case."* CrDoc 310, Tr Budget Hearing, pp. 14-15. Despite the unequivocal warning, and without consulting an independent expert[9] or even Choney himself, trial counsel called Choney. *Id.*

The panel finds that repeating "a winning strategy in a later trial for the same type of crime, involving the same defendant, strikes us as eminently reasonable'" Opinion at 10, quoting *Laws v. Armontrout*, 863 F. 2d 1377, 1393 (8th Cir. 1988). In *Laws*, however, the court specifically warned against setting a *per se* rule – and noted that "[c]ounsel's choice was solidly grounded in practical concerns and experience" "and he took the opportunity to find out what had been effective and what had not." *Id.*, at 1393. That is not the case here. In the state trials, Echols' strategy was not to call Choney but to cross examine him. The very counsel on whose winning strategy Hilfiger's decision purportedly relied[10] made it very clear that he would rely on Choney *only* through cross-examination. *Id.* at 17. And even then, Echols was prepared should the cross not go to Barrett's benefit. He had an expert ready to call. CrDoc 310, Tr Budget Hearing, p.13.

2. *Failure to effectively challenge the inadmissible, unreliable testimony of the government's crime scene reconstruction "expert."*

Barrett submitted the report of Edward Hueske, a crime scene and ballistics expert, who reviewed the government's expert Iris Dalley's testimony, trial exhibits and Power Point presentation. Doc 3, Exh 110; Doc. 95, p. 183. Had counsel engaged Mr. Hueske's services, or those of any other independent defense expert, the judge and jury would have

---

[9] See *Barkell v. Crouse,* 468 F.3d 684, 699 (10th Cir. 2006).

[10] Unlike explanation for relying solely on cross-examination of the government's crime scene expert Iris Dalley, Hilfiger's declaration is silent as to why he called Choney as a defense witness. Doc 175, Exh 12.

10

heard credible evidence that Dalley's testimony was based on junk science and that her analysis was unscientific, seriously flawed, and did not comport with the protocols for conducting a reliable crime scene reconstruction. Doc 3,Exh 109, p. 6.

Counsels' failure to challenge Dalley's testimony was professionally unreasonable in three ways: (1) failure to exclude Dalley's testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993) and *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137 (1999); (2) failure to retain and present a crime scene expert like Hueske to rebut Dalley and support the defense's theory; and, (3) failure to reasonably investigate and consult with an expert to conduct an effective cross-examination. Absent Dalley's testimony, there is little, if any, physical evidence to support the prosecution's theory on how the shooting occurred and the position of Mr. Barrett when he fired his rifle.

Once again, the panel invoked the prior strategy rule and refused to "condemn the decision to rely solely on cross-examination of Dalley when that strategy apparently worked well in the state trials." Opinion at 13. It is undisputed that counsel consulted no expert and did *not* have second trial transcripts. *Id.* at 12. To bolster its opinion, panel relies on trial counsel's declaration, which lays out no substantive investigation into the reasonableness of relying solely on cross-examination. Doc 175, Exh 12 (explaining that he *felt* he "could rely on the same plan" and "did not think" a defense expert "would make a difference[.]") The panel notes Echols' observations that [Dalley's] testimony was "kind of embarrassing for the Government" to indicate the favorable outcome of the strategy. Opinion at 11. The panel's leap from reliance on a well-prepared, well-

11

informed cross-examination by Echols to the finding that Hilfiger's performance, sans consultation or investigation was reasonable starkly conflicts with *Strickland*.

As Hilfiger's declaration acknowledges, Echols nearly succeeded in keeping Dalley's testimony out completely. Hilfiger did not even make the motion. Echols retained and consulted experts. CrDoc 310, TR Budget Hearing, p. 9. Hilfiger did not. Mr. Echols recognized that the federal case was likely going to be tried differently and thus they could not depend on being able to "get into the kinds of issues that [he] was able to get into on cross examination." *Id.,* at 11. Hilfiger expressed no awareness of that difference in the trials. Echols "has a pretty good science background" so he was able to show on cross examination that Dalley's techniques were flawed. *Id.,* at 26. There is nothing to suggest that Hilfiger has such a background, or consulted anyone or studied the science to conduct a successful cross. Nor does the transcript reflect a well-crafted cross-examination. Doc 342, Vol. 14, pp.2262-3317, Doc 343, Vol. 15, pp. 3327-3425, 3473-3482. Echols had hired Hueske for the second state trial. Hueske would have testified that Dalley's dowel reconstruction was bunk and her conclusions were not scientifically reliable. Hilfiger had no expert.[11] Trial counsel's strategy fell far short of Echols' efforts and, more relevant, the prevailing professional norms.

---

[11] Mr. Echols was well aware of the potential invalidity of the ballistics testimony absent the supporting documentation and would have moved for an expert to re-examine the "very tiny" bullet fragment." CrDoc 310, at 13. See Opinion at 13. Barrett ought at least have the opportunity to re-examine the bullet fragments. It is a matter of life and death.

**C. THE COURT MISAPPREHENDED MR. BARRETT'S GUILT-PHASE MENTAL-HEALTH EVIDENCE, MISSTATED THE *MENS REA* ELEMENT AND WRONGLY CONCLUDED THAT MR. BARRETT FAILED TO SHOW PREJUDICE.**

Mr. Barrett was denied the effective assistance of counsel based on his lawyers' failure to present mental-health evidence during the guilt-phase of trial. The Court summarily dismissed this argument, finding no need to determine whether Barrett's counsel should have investigated these claims because Barrett show no prejudice. Opinion at 14. The panel decision is wrong in law and fact. The panel, without analyzing the evidence submitted in support of Barrett's claim, concluded "Defendant points to no available expert testimony that he could not form the intent to shoot the victims (or any other relevant *mens rea*)." *Id.* at 15. The panel misapprehended the expert testimony offered and relied on the wrong *mens rea* element.

### 1. The Expert Testimony

In his Opening Brief to this Court, Mr. Barrett cited to sworn declarations setting forth the proposed expert testimony of George Woods, M.D (Doc 72 Exh 117); Bill Sharp, Ph.D. (Doc 72, Exh 55); and, Myla H. Young, Ph.D. (Doc 72, Exh 89). Dr. Woods unequivocally stated that, in his professional opinion, Barrett's mental disorders made him believe that his actions were right at the time of the police action on his property. Doc 3, Exh 117 at ¶¶ 77-78. Dr. Woods stated further that Mr. Barrett could not understand the difference between right and wrong based on his profound cognitive Dysexecutive Syndrome. Dr. Sharp agreed with Dr. Woods' diagnoses. In addition, Dr. Young found that Barrett suffered from prefrontal and temporal cortex dysfunction,

which impeded virtually all aspects of Mr. Barrett's daily functioning. The panel ignores Drs. Woods' and Young's conclusions that, drawing on Dr. Sharp's report and the "extant" records, Mr. Barrett suffered from the organic impairments and mental illnesses they diagnosed *at the time of the offense*. Doc 72, Exhs 89 ¶ 66, 117, ¶¶ 68-78.

### 2. *Mens Rea*

The panel's reliance on *United States v. Brown,* 326 F.3d 1143, 1147 (10th Cir. 2003) is misplaced. Opinion at 14. In *Brown*, the proffered mental health evidence had no nexus to the general intent required to possess drugs with intent to distribute. The *Brown* court specifically found that "psychological or psychiatric evidence that negates the essential element of *specific intent* can be admissible." *Brown,* 326 F.3d at 1147 (emphasis added). This Court stated that Mr. Barrett "points to no available evidence that he could not form the intent to shoot the victims (or any other relevant *mens rea*)." Opinion at 15. Such a showing is not required. What Mr. Barrett did show is that his mental state was such that his judgment and perception were impaired. Mr. Barrett's evidence of mental illness in the guilt-phase would have shown that Mr. Barrett lacked the specific intent to convict on Count 3. To be guilty of that charge, the government was required to prove that Mr. Barrett specifically intended to kill a law enforcement officer because he was a law enforcement officer engaged in his official duties. *See United States v. Barrett,* 496 F.3d 1079, 1112 (2007). Count 2 required only a finding that Mr. Barrett committed the "crime of violence" in Count 3. *See id.* This is very different than the "intent to shoot the victims." The expert testimony proffered by Drs. Woods, Sharp and Young, if true, show that Barrett's mental defects made it impossible for Barrett to

form the specific intent required and impacted the *mens rea* elements of the charges.  The

Panel's rejection of the issue is in error.

**D.     AT A MINIMUM, MR. BARRETT IS ENTITLED TO AN EVIDENTIARY HEARING.**

The record and expanded record in this case and the arguments based on it, if true,

would entitle Petitioner to relief. "An evidentiary hearing is necessary to determine if Mr.

Barrett's allegations are, in fact, true."  *United States v. Weeks,* 653 F.3d 1188, 1206

(10th Cir. 2011).  The Panel's failure to so find is not supported by the record.

**CONCLUSION**

The Petition for Rehearing and Rehearing En Banc should be granted, the panel's

judgment should be vacated, and Barrett's convictions and sentence should be reversed or

the matter remanded for an evidentiary hearing.

RESPECTFULLY SUBMITTED this 5th day of October, 2015,

 /s/ *David B. Autry*
DAVID B. AUTRY, OBA# 11600
Attorney at law


HEATHER E. WILLIAMS, CSB#122664
Federal Defender


/s/ *Joan M. Fisher*
JOAN M. FISHER, ISB#2854
Assistant Federal Defender


Attorneys for KENNETH EUGENE BARRETT

**CERTIFICATE OF DIGITAL SUBMISSION**

I certify that all required privacy redactions have been made and, with the exception of those redactions, every document submitted in digital form or scanned PDF format is an exact copy of the written document filed with the Clerk. I further certify that the ECF submission was scanned for viruses using Systematic Endpoint Protection, updated, October 5, 2015, and according to the program is free of viruses.

/s/ *Joan M. Fisher*
Joan M. Fisher, ISB No. 2854
Assistant Federal Defender

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

This is to certify that on this 5th day of October, 2015, I caused the foregoing

Petition for Rehearing and Petition for Rehearing En Banc to be filed with the Clerk of

the Court of Appeals using the ECF System for filing and with service to be made

electronically on the following ECF registrants:

Jeffrey B. Kahan,
United States Department of Justice
jeffrey.kahan@usdoj.gov,


Christopher J. Wilson,
Assistant United States Attorney
chris.wilson@usdoj.gov


Linda Epperley
Assistant United States Attorney
linda.epperley@usdoj.gov
United States Department of Justice
Eastern District of Oklahoma


To the undersigned's knowledge, there are no non-ECF registrants who are counsel
in this case.


Dated:   October 5, 2015


/s/ *Joan M. Fisher*
Joan M. Fisher, ISB No. 2854
Assistant Federal Defender

**CERTIFICATE OF COMPLIANCE**

This petition complies with the enlargement of brief size permitted by the Case

Management Ordered entered May 2, 2013.  The brief's size and type face comply with

Fed. R. App. P. 32(a)(5) and (5).  This petition is 15 pages, excluding the portions

exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

Dated:  October 5, 2015

> /s/ *Joan M. Fisher*
> Joan M. Fisher, ISB No. 2854
> Assistant Federal Defender

18